IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 9, 2025

## STATE OF TENNESSEE v. LEON NOEL

**Appeal from the Criminal Court for Shelby County
Nos. 18-05278, 18-05280, 18-05498, 20-00853, W2400238
Carlyn L. Addison, Judge**

_____

### No. W2025-00161-CCA-R3-CD

_____

The Defendant, Leon Noel, pled guilty to several offenses over a period of years, and the trial court suspended each of his sentences to probation. In 2024, the State alleged that he violated a special condition requiring inpatient drug treatment. Following a revocation hearing, the trial court found a violation on that basis and ordered him to serve the balance of each of his sentences in confinement. On appeal, the Defendant contends that his conduct amounted only to a technical violation and that the trial court erred in revoking all of his suspended sentence. Upon our review, we conclude that the record does not establish whether the treatment condition applied to the suspended sentences in four of the cases, and we remand those cases for additional findings. As to the remaining case, which includes suspended felony and misdemeanor sentences, we hold that the violation constituted a first instance of a technical violation. The trial court, therefore, lacked authority to revoke the suspended felony sentence, but the revocation of the suspended misdemeanor sentence was within its discretion. We accordingly affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgments of the Criminal Court Affirmed in Part,
Reversed in Part, Cases Remanded**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Phyllis Aluko, Chief Public Defender, and Tony N. Brayton, Assistant Public Defender (on appeal); and Kiara Hester, Assistant Public Defender (at hearing), Law Office of the Shelby County Public Defender, for the appellant, Leon Noel.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Alicia Walton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

This appeal involves the revocation of suspended sentences in five separate cases. In Cases 1, 2, and 3, the Defendant pled guilty in the Criminal Court for Shelby County on April 22, 2019, to two counts of misdemeanor domestic assault and one count of aggravated assault.[1]  The trial court imposed an effective sentence of six years and ordered the Defendant to serve the term on supervised probation.

Two years later, in Case 4,[2] the Defendant pled guilty to attempted unlawful possession of a weapon and received a six-year sentence to be served on probation concurrently with the first three cases.  The record does not show that the suspended sentences in Cases 1 through 3 were revoked, even in part, or that new conditions were added to the suspended sentences in those cases.

In April 2024, the Defendant pled guilty in Case 5 to robbery and misdemeanor domestic assault.[3]  He received concurrent sentences of six years and eleven months and twenty-nine days, respectively.  The trial court again suspended these sentences to probation, concurrent with the prior cases.  As a special condition of the suspended sentences in Case 5, the trial court ordered the Defendant to complete an inpatient drug treatment program upon release (hereinafter "inpatient treatment condition").  As before, the record does not show that the suspended sentences in Cases 1 through 4 were revoked, even in part, or that new conditions were added to them.

To comply with the inpatient treatment condition in Case 5, the Defendant entered the Cocaine Alcohol Awareness Program (CAAP) in Memphis on April 24, 2024.  On May 6, 2024, CAAP administratively discharged him before he completed the program.  The

---

[1]     Cases 1, 2, and 3 include case numbers 18-05278, 18-05280, and 18-05498, respectively.

[2]     The case number for Case 4 is 20-00853.

[3]     The case number for Case 5 is W2400238.

CAAP supervisor reported that staff removed the Defendant for allegedly distributing illicit drugs to other patients.

That same day, the Defendant's probation officer filed a Violation of Probation Affidavit in all five cases. The affidavit alleged that the Defendant committed a technical violation of probation by failing to complete the inpatient treatment condition. The accompanying report also listed earlier compliance issues, including two positive drug screens, two failed Cognitive Behavioral Intervention Program classes, failure to complete a sanction, and four missed appointments.

On June 27, 2024, the trial court issued a violation warrant in the first four cases, alleging unlawful possession of a controlled substance and failure to complete the inpatient treatment condition. On July 11, 2024, the court issued a second warrant alleging the same violations in Case 5. Both warrants were executed on December 2, 2024, and the trial court held a revocation hearing about a month later.

## A.   PROBATION REVOCATION HEARING

At the revocation hearing, the State called Elton Higgins, a CAAP supervisor, who testified that the Defendant entered CAAP on April 24, 2024, with a projected discharge date of June 22, 2024. Mr. Higgins stated that on May 6, 2024, CAAP's "Rapid Response Team" conducted a facility-wide search after several residents displayed behavioral changes associated with substance use and others had overdosed in the preceding days. The staff found controlled substances in the building and discovered several residents who possessed drugs. Several clients identified the Defendant as one of the individuals selling drugs in the facility, though no controlled substances were found on his person or in his property.

During the search, Mr. Higgins met with the Defendant, who refused to consent to a personal search. Mr. Higgins testified that the Defendant did not deny the accusation that he was selling drugs, and CAAP discharged him from the program that day. Mr. Higgins was not aware of any attempt by the Defendant to return to the program.

The Defendant called Daryel Henderson, a CAAP Response Team supervisor, who testified that his team conducted pat-down searches of approximately fifty to sixty residents during the inspection. He said that, although he did not personally search the Defendant, another staff member may have done so. Mr. Henderson confirmed that the Defendant did not complete the CAAP program.

## B.   THE TRIAL COURT'S ANNOUNCEMENT

At the conclusion of the hearing, the trial court addressed the alleged violations. The court declined to find that the Defendant possessed or distributed drugs at CAAP, describing those accusations as "merely allegations" that were not established by the proof. The court therefore rejected the State's request to find a violation based on possession or distribution of controlled substances.

The court did find, however, that the Defendant violated the inpatient treatment condition. In characterizing the violation, the court acknowledged that "[i]t's technical," but insisted that "he still didn't complete the probation." The court also observed that the probation violation report reflected "some positive drug screens," but it did not make a separate violation finding on that basis.

In determining the consequence, the trial court concluded that further referrals for treatment would be futile, remarking, "I'm just not convinced [the Defendant] needs to waste any more of his time or mine." Concluding that the Defendant "simply did not complete his probation," the court ordered him to serve the balance of his original sentences in the Shelby County Correctional Center in each of the five cases.

The trial court entered its written revocation judgments on January 6, 2025. The Defendant filed a timely notice of appeal thirty days later. *See* Tenn. R. App. P. 4(a).

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in revoking each of the Defendant's suspended sentences in full.

We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.*

# ANALYSIS

When a trial court imposes a sentence for criminal conduct, it may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; -303(b) (2019). The trial court may also require the defendant to comply with conditions of probation that are reasonably suited to facilitate rehabilitation or protect the safety of the community. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of [a] probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1) (2018).

So long as a defendant complies with the conditions of probation, the suspended sentence remains in effect until it expires. *See State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024). If a defendant violates a condition of probation, however, the trial court may address the violation as it "may deem right and proper under the evidence," subject to statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As our supreme court explained in *Dagnan*, probation revocation is a two-step process involving "two distinct discretionary decisions." 641 S.W.3d at 757. First, the court must determine whether the defendant has violated a condition of probation. Second, if a violation is found, the court must determine the appropriate consequence of that violation. *Id.*

## A.    THE VIOLATION DETERMINATION

A trial court may not find a violation of a probation condition unless the record establishes that violation by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1) (2019); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Revocation must rest on a condition actually imposed; where the record does not show that the condition was part of the suspended sentence, the trial court lacks authority to revoke on that basis. *See id.* § 40-35-311(a), (d)(1); *State v. Moses*, No. W2016-01762-CCA-R3-CD, 2018 WL 2292998, at *4 (Tenn. Crim. App. May 18, 2018) (finding error in revoking probation for conduct that was not in violation of a condition of probation), *perm. app. denied* (Tenn. Sept. 14, 2018). To establish an abuse of discretion in the violation determination, a defendant must show that "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991); *State v. Stack*, 682 S.W.3d 866, 871 (Tenn. Crim. App. 2023).

### 1. Violation of the Inpatient Treatment Condition

Following the hearing, the trial court found that the Defendant violated the inpatient treatment condition. The record supports that finding. Supervisor Higgins testified that the Defendant was discharged from the CAAP Program after allegedly distributing illicit drugs to other participants and refusing to consent to a search by program staff. The trial court implicitly credited this testimony, and the testimony provides substantial evidence that the Defendant failed to comply with the inpatient treatment condition.

In its brief, the State emphasizes that the violation report alleged the Defendant had positive drug screens for fentanyl, marijuana, and cocaine, and it contends that these results amounted to three Class A misdemeanors. Although the report did allege three positive drug screens, the trial court did not find a violation on this basis. Moreover, even had such a finding been made, the record would not have supported it. The State presented no testimony from the probation officer, and it offered no other proof to substantiate these allegations otherwise. Accordingly, we affirm the trial court's determination that the only violation established by the evidence was the Defendant's failure to satisfy the inpatient treatment condition.

### 2. Presence of the Inpatient Treatment Condition in Cases 1 through 4

The inpatient treatment condition was expressly imposed in Case 5. Less certain is whether the same condition applied to the suspended sentences in Cases 1 through 4. The appellate record does not include the plea agreements in those cases, nor does it contain prior revocation or probation modification orders.

To clarify the record, this court directed the trial court clerk to supplement it with "the original judgment forms, the plea petition, and any trial court orders establishing the conditions of the Appellant's probation." The supplemental materials confirmed that none of the judgments in the first four cases included an inpatient treatment condition. The record also contains no order adding such a condition through a prior revocation or modification. *See* Tenn. Code Ann. § 40-35-308 (2019).

Because the scope of the inpatient treatment condition remained uncertain even after supplementation, we notified the parties of the issue and invited additional briefing. The State responded that the Defendant had waived the issue but, in the alternative, suggested that a remand for further findings would be appropriate.

We agree that a remand is appropriate. Although the Defendant did not challenge the application of the condition to Cases 1 through 4, the question is not one of waiver but of authority. A trial court may revoke probation only when the defendant has violated a condition that was actually imposed as part of the suspended sentence. *See* Tenn. Code Ann. § 40-35-311(a), (d)(1). As such, if the specific condition relied upon by the trial court was not imposed as part of the suspended sentence, the court would lack statutory authority to revoke probation on that basis. *See Moses*, 2018 WL 2292998, at \*4. Because jurisdiction cannot be waived, this court must independently examine the trial court's authority to act. *See* Tenn. R. App. P. 13(b).

Accordingly, we affirm the trial court's finding that the Defendant violated the inpatient treatment condition in Case 5. As to Cases 1 through 4, however, we vacate the revocation judgments and remand for additional findings. On remand, the trial court shall make an express finding as to whether the suspended sentences in those cases were conditioned upon the Defendant's completion of an inpatient drug treatment program. If not, the revocation warrants must be dismissed and any unexpired suspended sentences reinstated.[4] *See Moses*, 2018 WL 2292998, at \*4. If so, the trial court shall proceed to consider the appropriate consequence of the violation in accordance with Tennessee Code Annotated section 40-35-311(d), (e).

## B. CONSEQUENCE DETERMINATION

Having determined that the Defendant violated a condition of his probation in Case 5, we turn to the second step of the revocation analysis: determining the appropriate consequence for that violation. *See Dagnan*, 641 S.W.3d at 757-58. The Defendant argues that the trial court lacked authority to fully revoke his suspended sentences because his conduct amounted only to a technical violation. The State responds that the Defendant's alleged positive drug screens constituted non-technical violations, thereby authorizing a full revocation.

We agree with the Defendant that the trial court found only a technical violation of probation. However, the legislature has required courts to treat technical violations in felony cases differently from those in misdemeanor cases. Applying those requirements

---

[4] It also appears that the misdemeanor sentences in Cases 1 and 2, which were imposed in 2019, may have expired before the violation warrant was issued in June 2024. If those sentences had expired, the trial court would have lacked statutory jurisdiction to adjudicate any alleged violation of probation in those cases. *See, e.g.*, Tenn. Code Ann. § 40-35-310(a) (2019); *State v. Hunter*, 1 S.W.3d 643, 646 (Tenn. 1999).

here, we vacate the full revocation of his suspended felony sentence as required by the General Assembly, but we affirm the full revocation of the Defendant's suspended misdemeanor sentence.

### 1.      Suspended Felony Sentence with a Technical Violation

We begin with the revocation of the Defendant's suspended felony sentence in Case 5.  Before 2021, trial courts possessed broad authority to revoke a suspended sentence for any violation of probation conditions.  Although probationers sometimes argued that "technical violations" should warrant lesser sanctions, "the law generally rejected distinctions between technical and non-technical violations." *See Rand*, 696 S.W.3d at 103.

In July 2021, the General Assembly amended the probation statutes to create a graduated system of sanctions for violations.  The legislation established two categories— technical and non-technical violations—and assigned different potential consequences to each.  *See* 2021 Tenn. Pub. Acts, ch. 409, §§ 24, 25 (eff. July 1, 2021); *State v. Otten*, __ S.W.3d __, No. M2024-00128-CCA-R3-CD, 2025 WL 1091641, at *4 (Tenn. Crim. App. Apr. 8, 2025).  Under this system, a trial court "shall not revoke" a suspended felony sentence "based upon one (1) instance of technical violation or violations."  Tenn. Code Ann. § 40-35-311(d)(2) (Supp. 2021).  For a second or subsequent technical violation, however, the court "may temporarily revoke the probation and suspension of sentence" and impose graduated sanctions involving incarceration as follows:

(i)      Fifteen (15) days for a first revocation;

(ii)      Thirty (30) days for a second revocation;

(iii)      Ninety (90) days for a third revocation; or

(iv)      The remainder of the sentence for a fourth or subsequent revocation.

*Id.* § 40-35-311(e)(2) (Supp. 2021).  Thus, a court may not fully revoke a suspended felony sentence for a technical violation unless the probationer is facing a fourth or subsequent revocation.  A "technical violation" is currently defined as "an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." *Id.* § 40-35-311(g) (Supp. 2024).

The trial court found that the Defendant violated the conditions of his probation by failing to comply with the inpatient treatment condition. That conduct fits squarely within the definition of a technical violation, and the trial court acknowledged as much in its announcement. While termination from a substance use treatment program may constitute a TDOC zero-tolerance violation in certain circumstances—such as when the probationer is subject to the highest level of supervision—the record contains no evidence that the Defendant's discharge from CAAP fell within that category. To the contrary, without proof that the CAAP termination triggered a zero-tolerance violation, the violation remains a technical one. We therefore agree with the trial court's classification.

Because the violation is technical in nature, the trial court's authority to impose a consequence was limited by the statutory sanctions matrix. That framework requires the court to determine whether the instant violation represents the probationer's first instance of a technical violation, or whether prior instances have occurred or been subject to previous revocation proceedings. *See* Tenn. Code Ann. § 40-35-311(d)(2), (e)(2).

The record does not support a finding that the Defendant had committed other technical violations in Case 5. The violation report alleged that he had earlier been dismissed from another treatment program, Harbor House, which—if proven—could have constituted an earlier technical violation. Yet the Defendant did not admit this allegation, and the State presented no testimony from the probation officer or Harbor House staff to substantiate it. Because the record contains no evidence to support this allegation, it cannot be treated as a prior instance of a technical violation for purposes of the statutory sanctions matrix.

The record establishes that the Defendant's failure to complete the CAAP inpatient treatment program is the first instance of a technical violation. Pursuant to Tennessee Code Annotated section 40-35-311(d)(2), therefore, the suspended felony sentence is not subject to revocation proceedings. Accordingly, we respectfully reverse the judgment revoking the suspended felony sentence in Case 5 and remand for reinstatement of that suspended sentence.

### 2. Suspended Misdemeanor Sentence

A different analysis applies to the revocation of the Defendant's suspended misdemeanor sentence. When first enacted, the statutory sanctions matrix for technical violations applied to both felony and misdemeanor offenses. In 2022, however, the General Assembly limited the graduated sanctions matrix to felony sentences only. *See* 2022 Tenn.

Pub. Acts, ch. 1060, § 3 (eff. July 1, 2022). Since that amendment, a trial court may revoke a suspended misdemeanor sentence even for a first instance of a technical violation. *See* Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2022).

As a result, a trial court's authority over suspended misdemeanor sentences is broad. The court may fully revoke such a sentence based on either a technical or non-technical violation, even if the defendant has not previously violated the terms of probation. *See generally* Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2022). In exercising this discretion, courts evaluate whether probation continues to serve its rehabilitative purpose and whether the defendant remains amenable to correction. *Rand*, 696 S.W.3d at 106. As the supreme court explained in *Dagnan*, relevant considerations include the nature and seriousness of the violation, the defendant's history on probation, and the likelihood of future rehabilitation. *Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility, genuine remorse, and whether the defendant will comply with court orders designed to ensure effective rehabilitation. *Rand*, 696 S.W.3d at 106; Tenn. Code Ann. § 40-35-102(3)(C) (2019). The court may also consider whether the defendant poses a danger to the community. *See* Tenn. Code Ann. § 40-28-302(1).

In its oral ruling, the trial court repeatedly cited the Defendant's failure to complete inpatient treatment as the reason for full revocation. While those observations established that a violation occurred, *Dagnan* cautions that the consequence determination must extend beyond simply acknowledging that fact. *See Dagnan*, 641 S.W.3d at 758 ("Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden [as to the consequence determination]."). Nevertheless, on our de novo review of the consequence determination, we conclude that the trial court properly ordered a full revocation of the Defendant's suspended misdemeanor sentence.

First, the nature of this violation is significant. Although the General Assembly classifies the violation as being "technical in nature," the failure to comply with treatment recommendations for substance use can be a serious breach, particularly where substance use has been a recurring factor in a defendant's criminal conduct. Effective rehabilitation depends upon the defendant's voluntary cooperation. *See* Tenn. Code Ann. § 40-35-102(3)(C) (2019). As such, when a defendant refuses to provide that essential cooperation, little basis exists to conclude that rehabilitation will be "reasonably feasible" in the first instance. *See id.*

The Defendant's conduct in treatment here illustrates this very point. Upon entering CAAP, participants agreed that their property and persons could be searched for

- 10 -

contraband. When staff observed troubling changes in behavior, they initiated a facility-wide search. The Defendant refused to cooperate when asked to submit to a search, thereby violating a core program requirement. He also declined to cooperate when questioned about possible contraband. These refusals to comply with CAAP's core requirements underscored his unwillingness to engage in treatment and undermined the voluntary cooperation necessary for rehabilitation.

Second, the timing of the Defendant's removal from CAAP further underscores the seriousness of the violation and his unwillingness to comply with the terms of probation. He was discharged only days after entering the program, at a point when compliance with conditions should have been at its highest. When a defendant violates probation almost immediately after sentencing or following a prior violation, the conduct suggests not only noncompliance but also a lack of genuine commitment to rehabilitation. As this court has observed, "new violations that have occurred quickly after sentencing or a previous probation violation may show that the defendant is not voluntarily cooperating with rehabilitative measures." *State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at *4 (Tenn. Crim. App. Oct. 18, 2022), *no perm. app. filed*. The Defendant's quick removal here confirms that he was unwilling to engage seriously with the rehabilitative process.

Third, the Defendant's conduct on probation confirms that he is not an appropriate candidate for community-based rehabilitation. The Public Safety Act of 2016 specifically authorizes trial courts to evaluate whether a probationer can "remain compliant and crime-free in the community" when determining the proper consequence. Tenn. Code Ann. § 40-28-302(2). Because the rehabilitative goals of probation are directed toward lawful behavior and public safety, this court "has long recognized that where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served." *State v. Graham*, No. W2024-01223-CCA-R3-CD, 2025 WL 1013957, at *3 (Tenn. Crim. App. Apr. 3, 2025) (quoting *State v. Robinson*, No. E2024-00176-CCA-R3-CD, 2024 WL 4554688, at *3 (Tenn. Crim. App. Oct. 23, 2024)), *no perm. app. filed*.

The Defendant was initially placed on probation after convictions for aggravated assault and two counts of domestic assault. Since then, he has been convicted of domestic assault and the felony offenses of aggravated assault and unlawful possession of a weapon. In short, while he has been on probation meant for his rehabilitation, the Defendant has continued to engage in violent criminal conduct and repeat the same types of assaultive behavior. These facts demonstrate that "the Defendant cannot or will not abide by the first rule of probation: maintaining lawful conduct." *State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *4 (Tenn. Crim. App. Jan. 9, 2023), *no perm. app. filed*. His

unwillingness to participate in a substance-use treatment program only heightens his risk of danger to the community.

Ultimately, the nature of the violation, the Defendant's repeated violent criminal history, and his refusal or inability to engage in treatment, weigh heavily against continued community-based rehabilitation. Accordingly, on our de novo review, we respectfully affirm the trial court's judgment fully revoking the Defendant's suspended misdemeanor sentence in Case 5.

## CONCLUSION

This case illustrates the issues that can arise when multiple suspended sentences are revoked in a single proceeding. Probation revocation is not a one-size-fits-all exercise, and each suspended sentence may present unique considerations. Some sentences, for example, may have expired, be subject to distinct terms or conditions, or arise from different types of offenses. The governing principle is that, when multiple suspended sentences are before the court, each sentence stands on its own and must be evaluated on its own terms.

Consistent with these principles, we hold that the record does not establish whether the inpatient treatment condition applied to the suspended sentences in Cases 1 through 4. As such, we remand those cases for additional findings. In Case 5, we conclude that the trial court lacked statutory authority to revoke the suspended felony sentence because the violation constituted a first instance of a technical violation. However, we affirm the full revocation of the suspended misdemeanor sentence. Accordingly, we respectfully affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE